IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

CASE NO. 22-3279

---

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

JOSHUA GLOWACKI,
Defendant-Appellant.

---

On Appeal from the United States District Court
for the Northern District of Ohio
Eastern Division

---

BRIEF OF PLAINTIFF-APPELLEE

---

Kenneth P. Tableman
71 Maryland Avenue, SE
Grand Rapids, MI 49506-1819
Telephone No: 616-233-0455

Counsel for Defendant-Appellant

MICHELLE M. BAEPPLER
First Assistant United States Attorney

Michael A. Sullivan
Assistant United States Attorney
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
Telephone No: 216-622-3977
Facsimile No: 216-522-8355
Michael.A.Sullivan@usdoj.gov

Counsel for Plaintiff-Appellee

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT REGARDING ORAL ARGUMENT ............................................ vii

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUES.................................................................2

STATEMENT OF THE CASE...................................................................3

SUMMARY OF THE ARGUMENT .......................................................9

ARGUMENT ...................................................................................13

    I.    THE DISTRICT COURT PROPERLY DENIED GLOWACKI'S MOTION TO SUPPRESS ................................................................13

    II.    THE APPELLATE WAIVER PROVISION OF GLOWACKI'S PLEA AGREEMENT BARS HIS ARGUMENT THAT THE DISTRICT COURT ABUSED ITS DISCRETION IN IMPOSING RESTITUTION ................................................................25

    III.    THE DISTRICT COURT PROPERLY ORDERED RESTITUTION of $10,000 TO A CHILD PORNOGRAPHY VICTIM WHO SUBMITTED A COMPREHENSIVE RESTITUTION REQUEST AND WHOSE IMAGE GLOWACKI ADMITTED TO RECEIVING ................................................................32

CONCLUSION...................................................................................45

CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION.................46

CERTIFICATE OF SERVICE ..............................................................47

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............48

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal Cases</u>

*Butler v. City of Detroit*, 936 F.3d 410 (6th Cir. 2019) ...........................17

*District of Columbia v. Wesby*, 138 S. Ct. 577 (2018) ...........................16

*Franks v. Delaware*, 438 U.S. 154 (1978) ..................................................7

*Hester v. United States*, 139 S. Ct. 509 (2019) ........................................43

*Illinois v. Gates*, 462 U.S. 213 (1983) ...................................... 14, 15, 18

*Messerschmidt v. Millender*, 565 U.S. 535 (2012) ..................................22

*Paroline v. United States*, 572 U.S. 434 (2014) ............................... 34, 36

*Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685 (6th Cir. 1985) ..............44

*Thacker v. City of Columbus*, 328 F.3d 244 (6th Cir. 2003) ...................14

*Tlapanco v. Elges*, 969 F.3d 638 (6th Cir. 2020)......................................17

*United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006)...........................15

*United States v. Allen*, 211 F.3d 970 (6th Cir. 2000).................... 13, 15, 20

*United States v. Asgari*, 918 F.3d 509 (6th Cir. 2019) ...........................25

*United States v. Barry*, 647 F. App'x. 519 (6th Cir. 2016) ....................31

*United States v. Batti*, 631 F.3d 371 (6th Cir. 2011) ..............................32

*United States v. Bennett*, 905 F.2d 931 (6th Cir. 1990)...........................15

*United States v. Besase*, 521 F.2d 1306 (6th Cir. 1975)...........................15

*United States v. Bowman*, 634 F.3d 357 (6th Cir. 2011) .........................27

*United States v. Calderon*, 388 F.3d 197 (6th Cir. 2004)........................29

*United States v. Carpenter*, 360 F.3d 591 (6th Cir. 2004)................. 22, 24

*United States v. Church*, 731 F.3d 530 (6th Cir. 2013)............................32

*United States v. Churn*, 800 F.3d 768 (6th Cir. 2015)................................44

*United States v. Cochrane*, 702 F.3d 334 (6th Cir. 2012) ........................13

*United States v. Dillard*, 891 F.3d 151 (6th Cir. 2018) ...........................25

*United States v. Dunning*, 857 F.3d 342 (6th Cir. 2017)..........................15

*United States v. Durk*, 149 F.3d 464 (6th Cir. 1998)................................14

*United States v. Elbe*, 774 F.3d 885 (6th Cir. 2014)................................18

*United States v. Elson*, 577 F.3d 713 (6th Cir. 2009)..............................32

*United States v. Evers*, 669 F.3d 645 (6th Cir. 2012)..............................34

*United States v. Fleming*, 239 F.3d 761 (6th Cir. 2001)..................... 26, 28

*United States v. Fowler*, 956 F.3d 431 (6th Cir. 2020) ...........................27

*United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005)..................... 14, 15

*United States v. Frechette*, 583 F.3d 374 (6th Cir. 2009)................. 18, 19

*United States v. Grundy*, 844 F.3d 613 (6th Cir. 2016).............................31

*United States v. Gunter*, 620 F.3d 642 (6th Cir. 2010)............................39

*United States v. Hockenberry*, 730 F.3d 645 (6th Cir. 2013) ...................13

*United States v. Jenkins*, 396 F.3d 751 (6th Cir. 2005) ...........................14

*United States v. Johnson*, 707 F.3d 655 (6th Cir. 2013)...........................13

*United States v. Lay*, 612 F.3d 440 (6th Cir. 2010) .................................44

*United States v. Leake*, 998 F.2d 1359 (6th Cir. 1993) ...........................13

*United States v. Leon*, 468 U.S.C. 897 (1984).....................................7, 22

*United States v. May*, 399 F.3d 817 (6th Cir. 2005)................................25

*United States v. McCoy*, 905 F.3d 409 (6th Cir. 2018) ...........................24

*United States v. McGilvery*, 403 F.3d 361 (6th Cir. 2005).................. 26, 28

iv

*United States v. McPhearson*, 469 F.3d 518 (6th Cir. 2006)...................... 14, 16, 24

*United States v. Mobasseri*, 828 F. App'x. 278 (6th Cir. 2020)............................32

*United States v. Moorehead*, 912 F.3d 963 (6th Cir. 2019)...................................22

*United States v. Morrison*, 852 F.3d 488 (6th Cir. 2017)......................................28

*United States v. Paull*, 551 F.3d 516 (6th Cir. 2009)...................................... 19, 20

*United States v. Pritchett*, 749 F.3d 417 (6th Cir. 2014) .........................................13

*United States v. Riccardi*, 989 F.3d 476 (6th Cir. 2021) ........................................27

*United States v. Rothenberg*, 923 F.3d 1309 (11th Cir. 2019) ...............................41

*United States v. Sawyer*, 825 F.3d 287 (6th Cir. 2016) ................................... 32, 43

*United States v. Sharp*, 442 F.3d 946 (6th Cir. 2006) ...........................................28

*United States v. Sheffey*, 57 F.3d 1419 (6th Cir. 1995) .........................................43

*United States v. Smith*, 182 F.3d 473 (6th Cir. 1999).............................................15

*United States v. Smith*, 344 F.3d 479 (6th Cir. 2003)............................................27

*United States v. Sonagere*, 30 F.3d 51 (6th Cir. 1994)...........................................14

*United States v. Sosebee*, 419 F.3d 451 (6th Cir. 2005) .........................................44

*United States v. Swanberg*, 370 F.3d 622 (6th Cir. 2004)............................... 26, 28

*United States v. Tagg*, 886 F.3d 579 (6th Cir. 2018)......................................... *passim*

*United States v. Toth*, 668 F.3d 374 (6th Cir. 2012)......................................... 27, 30

*United States v. Wagers*, 452 F.3d 534 (6th Cir. 2006).................................... 18, 19

*United States v. Washington*, 380 F.3d 2361 (6th Cir. 2004)..................................25

*United States v. Winans*, 748 F.3d 268 (6th Cir. 2014) ....................... 26, 27, 31, 32

*Warden v. Hayden*, 387 U.S. 294 (1967)................................................................14

## Federal Statutes

18 U.S.C. § 2252(a)(2) ................................................................................6

18 U.S.C. § 2252A(a)(2) ...........................................................................34

18 U.S.C. § 2252A(a)(5)(B) .......................................................................6

18 U.S.C. § 2259 .......................................................................................34

18 U.S.C. § 2259(a) ..................................................................................34

18 U.S.C. § 2259(b)(2) ..............................................................................34

18 U.S.C. § 2259(b)(2)(A) .........................................................................34

18 U.S.C. § 2259(b)(2)(B) .........................................................................34

18 U.S.C. § 2259(b)(3) ..............................................................................34

18 U.S.C. § 2259(b)(4) ..............................................................................34

18 U.S.C. § 2259(b)(4)(B) .........................................................................43

18 U.S.C. § 3014 .......................................................................................34

18 U.S.C. § 3231 .........................................................................................1

18 U.S.C. § 3664(e) ..................................................................................34

18 U.S.C. § 3742 .........................................................................................1

28 U.S.C. § 1291 .........................................................................................1

## Other Authorities

U.S. Const. amend. IV ..............................................................................14

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellee, the United States of America, believes the briefs and record adequately present the facts and legal argument and that oral argument would not significantly aid the decisional process.  The record affirmatively shows that the search warrant for Glowacki's residence established probable cause.  The record also affirmatively demonstrates that Glowacki waived the right to claim that the district court abused its discretion in imposing restitution.  Even if the appellate waiver did not apply the record establishes that the district court did not abuse its discretion by ordering Glowacki to pay $10,000 in restitution to an identified victim.  Thus, the government recommends that this Court decide the case on the briefs under Federal Rule of Appellate Procedure 34(a)(2)(C).

## **JURISDICTIONAL STATEMENT**

The district court had jurisdiction under 18 U.S.C. § 3231.

(R. 20: Indictment, PageID 105-06). It sentenced Defendant-Appellant Joshua

Glowacki on March 4, 2022 (R. 59: Judgment, PageID 392), and entered its

judgment memorializing that sentence on March 25, 2022. (*Id.*). Glowacki

appealed on March 25, 2022. (R. 61: Notice of Appeal, PageID 405). This Court

has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## <u>STATEMENT OF THE ISSUES</u>

I.    Whether the district court properly denied Glowacki's motion to suppress because the warrant established probable cause, which officers executed in good faith?

II.   Whether Glowacki's knowing and voluntary appeal waiver bars his argument that the district court abused its discretion in imposing restitution?

III.  Whether the district court abused its discretion in ordering $10,000 restitution to a child-pornography victim who submitted a comprehensive restitution request and whose image Glowacki admitted to receiving?

## STATEMENT OF THE CASE

### A.    Factual Background

Joshua Glowacki received and possessed child pornography, resulting in the instant federal charges.  (R. 20: Indictment, PageID 105).  At the time of his conduct in this case, Glowacki had previously been convicted of 14 counts of pandering sexually oriented matter involving minors, under Ohio Revised Code §§ 2907.322(A)(1) and (A)(2).  (R. 1: Complaint, PageID 3; R. 50: PSR, PageID 332).  On May 21, 2019, he was sentenced to a term of two years' probation in Cuyahoga Court of Common Pleas Case No. 18CR63367.  (R. 50: PSR, PageID 332).

The Federal Bureau of Investigation began to investigate Glowacki in October 2020 for sending Bitcoin payments to a dark web site in order to access child sexual abuse material.  (R. 37-3: Motion to Suppress, Exhibit B – Search Warrant Affidavit ("Warrant Affidavit"), PageID 224).  That investigation ultimately resulted in investigators obtaining a federal search warrant for Glowacki's residence.  (*Id.*, PageID 206-34).  The affidavit for that warrant, and its supporting information, established the following.

On November 16, 2019, Glowacki registered an account with a cryptocurrency exchange called Coinbase, using the email address jglowacki27@gmail.com and telephone number XXX-XXX-3859.  On

3

December 24, 2019, he sent two Bitcoin payments to a Bitcoin address ("Bitcoin Address") associated with childsivo3n3xzei.onion ("Target URL").

(R. 1: Complaint, PageID 4; R. 37-1: Motion to Suppress, Exhibit A – FBI Report, PageID 197). The site advertised $15.00 for "Access to 10 + terabytes of child porn private site." (R. 37-1: FBI Report, PageID 200). Every Bitcoin transaction requires a fee, and Glowacki made an initial transfer of $18.27 and a second transfer of $18.29 to Bitcoin Address. (R. 37: Motion to Suppress, PageID 179; R. 38: Response, PageID 237).

Child pornography can be stored on computers, and the ability of computers to store images in digital form makes them an ideal repository. (R. 37-3: Warrant Affidavit, PageID 218-19). The "dark net" is a part of the internet that is intentionally hidden from the general public and cannot be accessed through standard browsers. (*Id.*, PageID 220). Dark net marketplaces operate on the dark net, primarily selling or brokering transactions involving drugs, cyber-arms, weapons, counterfeit currency, stolen credit card details, "forget documents," unlicensed pharmaceuticals, steroids, and other illicit goods. (*Id.*). Dark net vendors generally accept payment in cryptocurrency, such as Bitcoin. (*Id.*).

All of the child pornography sites associated with Bitcoin Address were identified by the FBI and DARKBLUE, a commercially available platform that allows users to search the dark web. (R. 37-1: FBI Report, PageID 197). Bitcoin

4

Address had previously been described in the public website

www.bitcoinabuse.com as follows:

> TOR site advertising for child exploitation videos. Below is the
> ad US $ 15 – After payment to the bitcoin address
> number:15WK91Jq47uFASfBGwvY6SSv6Vc7tEgZfJ write the
> transaction number write to e-mail: video-child@secmail.pro
> we will send you access.

(R. 37-3: Warrant Affidavit, PageID 226).

Between November 9, 2020, and January 2, 2021, someone accessed

Glowacki's email multiple separate times from IP address 108.94.129.177. (*Id.*,

PageID 228).  The IP address was assigned to Glowacki's residence on

November 5, 2020, and was still assigned to his residence until at least

February 24, 2021.  (*Id.*, PageID 229).  Glowacki's phone number, used to register

his Coinbase account, was also registered to his residence, which was the residence

listed on Glowacki's Ohio driver license.  (*Id.*, PageID 225).

The warrant's Affiant had received training regarding child pornography and

child exploitation and had observed and reviewed numerous examples of child

pornography (as defined in 18 U.S.C. § 2256).  (*Id.*, PageID 206).  On February 18,

2021, investigators conducted surveillance at Glowacki's residence and saw him

removing snow in the driveway.  (*Id.*, PageID 228).

After obtaining the warrant, Agents conducted a search at Glowacki's

residence on March 23, 2021, and seized his phone.  (R. 1: Complaint, PageID 4).

Subsequent forensic analysis of that phone revealed images of child pornography, including one showing a URL of a dark net site. (*Id.*). These images included: (1) a prepubescent female, approximately 6 to 9 years old, naked and tied to a chair, facing down with an adult male holding her from the rear; (2) a prepubescent male, approximately 8 to 10 years old, with his pants down standing behind a prepubescent female of similar age naked below the waistline, appearing to have intercourse in a standing position; and (3) a prepubescent female, approximately 11 to 13 years old, performing oral sex on an adult male. This latter image included the URL of a dark net site. (*Id.*, PageID 4-5).

**B.    Procedural History**

In a criminal complaint filed on March 29, 2021, Glowacki was federally charged with receipt and distribution of visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). (R. 1: Complaint, PageID 1-6). On October 13, 2011, Glowacki was charged in a two-count indictment with receipt of visual depictions of real minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) (Count 1); and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2). (R. 20: Indictment, PageID 105-06).

Glowacki moved to suppress evidence seized pursuant to the search of his residence, making three claims: (1) that the search warrant affidavit lacked

6

probable cause because it had omitted material facts and information; (2) that there was an insufficient nexus between the place to be searched and the evidence sought; and (3) that the information in the affidavit was stale. (R. 37: Motion to Suppress, PageID 176). He requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). (*Id.*, PageID 171, 193-94). The government opposed the motion on its merits, and further argued that the good-faith exception under *United States v. Leon*, 468 U.S.C. 897 (1984), applied. (R. 38: Response, PageID 235-46). The district court denied Glowacki's motion to suppress and his *Franks* hearing request. (R. 45: Order, PageID 280-88).

Glowacki subsequently pled guilty to Count 1. (R. 47: Plea Agreement, PageID 290-300). He preserved the right to appeal the denial of his motion to suppress, as well as any sentence exceeding the statutory maximum, and any sentence exceeding the maximum advisory Guidelines range. (*Id.*, PageID 295). The plea agreement advised that the district court "may order Defendant to pay restitution as a condition of the sentence, probation, and/or supervised release." (*Id.*, PageID 292).

On February 4, 2022, "Lily," an identified victim of child pornography, submitted a restitution request and victim impact statement. (R. 50: Presentence Report ("PSR"), PageID 327-30). Lily requested $10,000 in restitution. (*Id.*, PageID 327). She provided extensive documentation for her losses totaling

$6,008,536.29. (*Id.*). The PSR noted that while there had been 1,579 restitution orders entered for Lily, she had only received payment for less than half of her losses. (*Id.*).

At sentencing on March 4, 2022, Glowacki asked the district court to impose the minimum $3,000 restitution amount. (R. 69: Sentencing Trans., PageID 423). He asked the court to decide "whether or not the evidence supports" that his conduct "caused $10,000 worth of value." (*Id.*, PageID 426). Glowacki noted that he was not involved in the distribution or production of the images and that he possessed nine images. (*Id.*, PageID 427). He further asked that the court "consider the factors and make a determination as to the appropriate restitution amount." (*Id.*, PageID 429). Glowacki requested that the court consider the number of restitution orders payable to Lily that had already been entered in other cases. (*Id.*, PageID 426-27, 430). After hearing Glowacki's argument against the $10,000 restitution award requested by the victim and recommended in the PSR, the court explained it would take up the objection and address it when finalizing sentence. (*Id.*, PageID 431).

The district court sentenced Glowacki to a total of 15 years imprisonment, with credit for time served, followed by 15 years of supervised release. (R. 59: Judgment, PageID 392-94). He was ordered to pay Lily $10,000 in restitution. (*Id.*, PageID 398; R. 69: Sentencing Trans., PageID 454).

Glowacki now appeals.  (R. 61: Notice of Appeal, PageID 405).  Because the district court correctly found that probable cause supported the search warrant, and because Glowacki's knowing and voluntary appeal waiver bars his restitution challenge, which also lacks merit because victim Lily's documentation supported the award, this Court should affirm in all respects.

## SUMMARY OF THE ARGUMENT

The district court properly denied Glowacki's motion to suppress.  The search warrant affidavit established that Glowacki, while on probation for his conviction for pandering sexually oriented material involving a minor, sent a payment to Bitcoin Address.  Bitcoin Address was affiliated with multiple websites providing access to child pornography.  The affidavit further outlined the Affiant's experience as an investigator of child pornography, and indicated that investigators had independently visited the Target URL associated with the Bitcoin Address to confirm that it contained child pornography.

Even if this Court disagrees with the district court's probable-cause determination, however, the good-faith exception would apply.  The affidavit established the following facts:  (1) that records obtained from Coinbase showed that an account registered to Glowacki had sent payments to a site advertising child sexual abuse material; (2) that while Glowacki was on probation following his conviction for 14 counts of pandering sexually-oriented matter involving minors,

he sent two bitcoin payments to an address associated with the multiple dark net child pornography sites and that the Target URL had been previously reported for advertising child exploitation videos; (3) that Glowacki provided his email address, phone number, and a photograph of his driver's license to Coinbase for verification purposes; (4) that the phone number was registered to Glowacki's residential address; and (5) that the email account was registered to Glowacki and was accessed from an IP address assigned to his residential address. Given these facts, which connected Glowacki to criminal conduct and the criminal conduct to his residence, the affidavit was not so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable. The good-faith exception therefore applies in the alternative. This Court therefore should affirm the district court's denial of the motion to suppress.

This Court should also decline to consider Glowacki's restitution claim. As part of his plea agreement, Glowacki waived his right to appeal and collaterally attack his conviction and sentence, reserving only the right to appeal the district court's denial of his motion to suppress and limited sentencing issues. (R. 70: Plea Trans., PageID 463-64). Notwithstanding this waiver, Glowacki now also seeks to appeal the restitution ordered as a part of his sentence. Because Glowacki's knowing and voluntary appellate waiver bars his challenge to the district court's restitution order, this Court should reject this claim without reaching its merits.

Even if this Court determines that the appellate waiver provision does not apply, however, the district court properly exercised its discretion by imposing restitution totaling $10,000 to Lily, an identified victim of child pornography. Glowacki pled guilty to receipt of visual depictions of minors engaged in sexually explicit conduct. Lily submitted a comprehensive restitution request that was attached to the PSR, along with a supporting explanation and documentation.

At sentencing, the district court read into the record portions of Lily's victim impact statement and described her long-term negative effects. Glowacki did not dispute the amount of Lily's losses. The victim's restitution request clearly supported a link between her victimization and losses incurred because of such victimization.

The district court thus properly exercised discretion in imposing restitution. The $10,000 amount matched the amount Lily had requested. It was a fraction of her estimated covered losses and comported with Glowacki's partial, yet indisputable role in causing those losses. The court was keenly attuned to the victim's suffering, underscoring Lily's "ongoing struggles due to the circulation of her sexual abuse images" by reading into the record portions of her victim impact statement, also contained in the PSR. (R. 69: Sentencing Trans., PageID 450-52). Indeed, in imposing the $10,000 restitution amount, the court stated that it felt this was a "conservative amount," and "point[ed] any reviewing court to the victim

11

impact statement, [and] the amounts of damages the victim suffered." (*Id.*, PageID 454).  The court also was aware that Glowacki had possessed one image of the victim.  (*Id.*, PageID 424, 446, 449).  The court considered, but rejected Glowacki request to impose the minimum $3,000 restitution amount, and it thoroughly explained its reasoning.

Thus, the district court properly exercised its discretion in ordering $10,000 in restitution.  Accordingly, this Court should affirm that order, if it reaches the issue at all.

## **ARGUMENT**

## I.    **THE DISTRICT COURT PROPERLY DENIED GLOWACKI'S MOTION TO SUPPRESS.**

### A.    **Standard of Review**

When reviewing a district court's denial of a motion to suppress, this Court reviews a district court's factual findings for clear error and its conclusions of law *de novo*. *United States v. Johnson*, 707 F.3d 655, 657 (6th Cir. 2013); *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993). This Court considers "evidence in the light most likely to support the district court's decision." *United States v. Pritchett*, 749 F.3d 417, 435 (6th Cir. 2014) (quoting *United States v. Cochrane*, 702 F.3d 334, 340 (6th Cir. 2012)). The district court's findings are clearly erroneous "only if the record as a whole leaves" this Court with a "definite and firm conviction that a mistake" was made. *United States v. Hockenberry*, 730 F.3d 645, 657 (6th Cir. 2013).

A reviewing court must give great deference to a magistrate judge's determination of probable cause. *Leake*, 998 F.2d at 1363. Thus, "an issuing magistrate's discretion should only be reversed if it was arbitrarily exercised." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). Under the proper standard of review of an issuing judicial officer's probable-cause determination, the requirements of the Fourth Amendment are satisfied when the judicial official had a substantial basis for concluding that a search would uncover evidence of

13

wrongdoing. *Illinois v. Gates*, 462 U.S. 213, 230, 238 (1983); *see also United States v. Sonagere*, 30 F.3d 51, 53 (6th Cir.), *cert. denied*, 513 U.S. 1009 (1994).

Whether the good-faith exception applies is reviewed *de novo. United States v. Durk*, 149 F.3d 464 (6th Cir. 1998).

### B.   Argument

The search warrant affidavit for Glowacki's residence established probable cause to believe that it would contain evidence of a crime.

The Fourth Amendment protects against unreasonable searches and seizures and provides that "no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  "Whether the police had probable cause to search determines whether a search conducted pursuant to a warrant comports with the Fourth Amendment."  *United States v. McPhearson*, 469 F.3d 518, 523 (6th Cir. 2006); *see also Warden v. Hayden*, 387 U.S. 294, 301-02 (1967);  *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003).

To demonstrate probable cause, an affidavit must contain facts establishing "a fair probability that evidence of a crime will be located on the premises of the proposed search."  *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005); *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).  "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof

14

but more than mere suspicion.'" *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). This conclusion depends on the totality of the circumstances. *Gates*, 462 U.S. at 230. This "is a 'practical, non-technical conception that deals with the factual and practical considerations of everyday life.'" *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *Frazier*, 423 F.3d at 531).

In making a probable cause determination, the issuing judge must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before them, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Dunning*, 857 F.3d 342, 346 (6th Cir. 2017); *see also Allen*, 211 F.3d at 975 ("Affidavits are not required to use magic words, nor does what is obvious in context need to be spelled out ....").

"The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Allen*, 211 F.3d at 975; *see also United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018). An affidavit is sufficient if it recites facts and circumstances from which a reasonably prudent person would conclude that an offense has been committed and that evidence thereof will be found at the place to be searched. *United States v. Besase*, 521 F.2d 1306, 1307 (6th Cir. 1975). "[P]robable cause does not

require officers to rule out a suspect's innocent explanation for suspicious facts . . . the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." *Tagg*, 886 F.3d at 586 (internal citations and quotations omitted). A search warrant affidavit "must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *McPhearson*, 469 F.3d at 524. "Facts must be considered *together*, not apart, since 'the whole is often greater than the sum of its parts.'" *Tagg*, 886 F.3d at 586 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018)) (emphasis in original).

Here, the district court properly denied suppression because, under the totality of the circumstances, the affidavit established probable cause.

### 1.    The Search Warrant Affidavit Established Probable Cause.

The district court correctly concluded that probable cause supported the search warrant in this case. The affidavit outlined that Glowacki is a registered sex offender in the State of Ohio. That requirement followed his May 2019 guilty plea in the Cuyahoga County Court of Common Pleas to charges of Pandering Sexually Oriented Matter Involving a Minor. (R. 37-3: Warrant Affidavit, PageID 224). The affidavit explained why investigators believed Glowacki had committed another child exploitation crime: subpoena results showed that a Coinbase

16

account, registered to Glowacki, was identified as sending bitcoin payments to an address associated with a dark net website that advertises child sexual abuse material.  (*Id.*, PageID 224-25).  Although Glowacki's payments are slightly above the website's advertised charges for access, there are fees associated with every such transaction.  *See* (R. 38: Response, PageID 237; R. 41: Sur-Reply to Defendant's Motion to Suppress, PageID 267-68).

Glowacki asserts the warrant lacked probable cause because the affidavit did *not* definitively establish the following:  that the site offered child sexual abuse material when he visited it; that he paid an amount other than the advertised $15; that the bitcoin payments he submitted were received; that he received emails instructing him how to access the site; or that he visited or downloaded the site. He claims these are material omissions that invalidate the warrant.  This argument is meritless.

A search warrant can be invalid if the supporting affidavit deliberately omits a fact or recklessly disregards the truth and the omission was material to the finding of probable cause.  *Tlapanco v. Elges*, 969 F.3d 638, 649 (6th Cir. 2020).  A warrant affidavit deliberately omits a fact or recklessly disregards the truth if the affiant knew of information that contradicted assertions in the affidavit.  *Butler v. City of Detroit*, 936 F.3d 410, 419 (6th Cir. 2019).  But the warrant here did not omit material facts critical to the probable cause determination.  Indeed, as the

17

district court observed, Glowacki's argument "ignores the purpose of the "dark web"—*i.e.*, to avoid detection by law enforcement." (R. 45: Order, PageID 284).

Glowacki's arguments hinge on the proposition that probable cause could only be demonstrated with evidence that he had completed every act required by the access instructions contained in the advertisement noted in the affidavit. In other words, Glowacki contends that any fact demonstrating that he did not fulfill some detail of the advertisement should have been included in the affidavit. "Certainty," however, "has no part in a probable cause analysis." *United States v. Frechette*, 583 F.3d 374, 380 (6th Cir. 2009) (citing *Gates*, 462 U.S. at 246).

In the context of child pornography prosecutions, this Court has held a "practical approach to the probable cause question" is required. *Tagg*, 886 F.3d at 586 (citing *Frechette*, 583 F.3d at 379); *United States v. Elbe*, 774 F.3d 885, 890 (6th Cir. 2014) ("connecting the defendant to the offending username and information about where the defendant lived established probable cause to search the defendant's residence."). Even if a website contains both legal and illegal material, that will not automatically negate probable cause. *Tagg*, 886 F.3d at 586; *United States v. Wagers*, 452 F.3d 534, 538-39 (6th Cir. 2006). "[E]vidence that a person has visited or subscribed to websites containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material." *Wagers*, 452 F.3d at 540 (citations omitted); *Frechette*, 583 F.3d at 379;

18

*Tagg*, 886 F.3d at 586.  *See also United States v. Paull*, 551 F.3d 516, 519 (6th Cir. 2009).

Indeed, this Court has reasoned that "if someone spends $80 for something, it is highly likely that the person will use it—whether it is a tie, a video game, or a subscription to a pornographic web site." *Frechette*, 583 F.3d at 380.  In *Frechette*, the defendant viewed the website's splash page, which "contained pornographic images of children, set up an account with PayPal on the same day, and transferred the exact amount of funds needed from his debit card to the PayPal account to pay for the subscription." *Id.* at 381.  This Court held these facts made "it all the more likely he would access what he paid to view" and that holding "otherwise would defy logic." *Id.  See also Tagg*, 886 F.3d at 586-87 ("fact-based examinations are enough" as warrant affidavits "need not allege facts establishing that a crime occurred").

Accepting Glowacki's argument would similarly defy logic.  Glowacki transferred cryptocurrency to Bitcoin Address, which was associated with multiple child pornography websites on the dark web.  He did so after being convicted of 14 child pornography offenses, while on probation for that conviction.  *See Wagers*, 452 F.3d at 541 (expressly finding that a prior conviction for possession of child pornography is relevant when analyzing probable cause).  It is nonsensical to suggest that Glowacki took these steps and transferred money to the Bitcoin

Address, but did not access the site.  At a minimum, it establish probable cause to believe that he did.

Thus, while the affidavit does not provide information which unequivocally proves Glowacki accessed, viewed, or downloaded child pornography from Target URL, it establishes that he sent a payment to Bitcoin Address affiliated with multiple websites providing access to child pornography.  (R. 37-3: Warrant Affidavit, PageID 225).  Affidavits are judged on what they contain, not on what a critic later says should have been added.  *Allen*, 211 F.3d at 975.  In *Paull*, a search warrant was obtained based on (1) an affidavit which detailed the defendant's subscriptions to websites containing advertising with images of child pornography and (2) the affiant's experience as an investigator of child pornography. *Paull*, 551 F.3d at 519.  As in *Paull*, the warrant here is based on (1) an affidavit detailing Glowacki's payment to a website associated with a child pornography website and (2) affiant's experience as an investigator of child pornography.  (R. 37-3: Warrant Affidavit, PageID 206, 224).

The affidavit here showed Glowacki used his email address, phone number, and driver's license to register his Coinbase account. (R. 37-3: Warrant Affidavit, PageID 224-25).  It explained that Glowacki's Coinbase account sent bitcoin payments to an address associated with a website advertising child sexual abuse material.  (*Id.*, PageID 225-28).  It is unlikely that Glowacki sent bitcoin to the dark

web—an area of the internet where anonymity is of the utmost importance for all the illegal purchases which take place there— to obtain access to child sexual abuse material, using his standard email address that contains his full last name. *See* (*Id.*, PageID 224).  Instead, it is far more likely that he used an alternate email address for any direct interaction with child pornography material and the dark web to protect his identity.  The Affiant did not undermine the judge's probable cause determination when she did not include such information in the affidavit given all the facts here, considered together.  *Tagg*, 886 F.3d at 586.

In sum, the affidavit here detailed Glowacki's prior conviction for pandering sexually oriented material involving a minor, including the fact that Glowacki remained on probation for that offense.  The affidavit provided information that the Bitcoin Address was associated with a website that allowed for paid access to child pornography and that Glowacki had made payment to the Bitcoin Address.  The affidavit further indicated that investigators had independently visited the Target URL associated with the Bitcoin Address and confirmed that it contained child pornography.  Given the totality of the circumstances, the affidavit established reasonable ground to believe that Glowacki possessed child pornography and that the crime was tied to his residence.  This Court should therefore affirm the denial of his motion to suppress.

### 2.    Even if the Search Warrant Affidavit Was Insufficient, the Good-Faith Exception Would Apply.

Suppression would have been inappropriate for yet another, independent reason—the good-faith exception established in *United States v. Leon*, 468 U.S. 897 (1984).  The rule *Leon* announced requires "a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place." *United States v. Carpenter*, 360 F.3d 591, 595-96 (6th Cir. 2004) (citation omitted).  The good-faith exception is premised on the idea that the "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916.  "[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, . . . or in objective good faith." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (cleaned up).

A court may conclude that the officers did not act in objectively reasonable good faith only under the following circumstances:  (1) the magistrate was misled by information in the affidavit and the affiant knew the information was false; (2) the magistrate abandoned their judicial role; (3) the warrant was so lacking an indicia of probable cause that official belief in its existence is unreasonable; or (4) the warrant was so facially deficient that it could not be reasonably presumed valid. *United States v. Moorehead*, 912 F.3d 963 (6th Cir. 2019).  None of those factors are present here.

22

Glowacki does not claim that the affidavit contained false information or that the judicial officer abandoned their role. He instead claims that because the affidavit did not establish that he subscribed to the illicit website, that he visited it, and that he downloaded from it, no reasonable officer could have relied upon it. The affidavit could not be described as "bare bones." As discussed above, the warrant established that records obtained from Coinbase showed an account registered to Glowacki sending payments to a site advertising child sexual abuse material. It also showed that, while Glowacki on probation following his conviction for 14 counts of pandering sexually oriented matter involving minors, he sent two bitcoin payments to an address associated with multiple dark net child pornography sites and that the Target URL had been previously reported for advertising child exploitation videos. Further, the affidavit noted that Glowacki had provided his email address, phone number, and a photo of his driver's license to Coinbase for verification purposes. In addition, it outlined that this phone number was registered to Glowacki's address, that the email account was registered to Glowacki, and that the email had been accessed from an IP address assigned to Glowacki's residential address. (R. 37-3: Warrant Affidavit, PageID 224-29). Hence, the affidavit was not so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable.

Further, the warrant was not so facially deficient that the executing officers could not reasonably presume its validity.  As this Court has explained, "for an officer's reliance on a search warrant to have been reasonable, the affidavit must present some 'particularized facts that indicate veracity, reliability, and basis of knowledge and go beyond bare conclusions and suppositions.'"  *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (quoting *McPhearson*, 469 F.3d at 526).  The affidavit did so here.

Here, a neutral magistrate was provided with an affidavit that had information about a registered sex offender sending payments to access dark web sites associated with child sexual abuse material.  *McCoy*, 905 F.3d at 416 ("The affidavit need not establish a 'substantial basis,' only 'some connection, regardless of how remote it may have been—some modicum of evidence, however slight— between the criminal activity at issue and the place to be searched.'" (citation omitted)); *Carpenter*, 360 F.3d at 596 ("We previously found *Leon* applicable in cases where we determined that the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity, even if the information provided was not enough to establish probable cause.").  Accordingly, "[t]he affidavit in this case, even if deemed to be insufficient to establish probable cause, was sufficient to fit within the good faith exception of *Leon*."  *United States v.*

*May*, 399 F.3d 817, 826 (6th Cir. 2005); *accord United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004).

"The question is not whether we would have found probable cause.  It is whether the affidavit was so skimpy, so conclusory, that anyone looking at the warrant would necessarily have known it failed to demonstrate probable cause." *United States v. Asgari*, 918 F.3d 509, 513 (6th Cir. 2019).  Applying this standard, suppression is not warranted.  Reversing the district court and ordering suppression would punish the investigators in this case who acted properly by obtaining a warrant.  The affiant carefully described the facts learned during the investigation, sought court-authorization to search, and received it.

Therefore, even if this Court were to find that the affidavit was defective—a contention the government disputes—the good-faith exception would still apply here.  Thus, this Court should affirm the denial of suppression.

## II.  THE APPELLATE WAIVER PROVISION OF GLOWACKI'S PLEA AGREEMENT BARS HIS ARGUMENT THAT THE DISTRICT COURT ABUSED ITS DISCRETION IN IMPOSING RESTITUTION.

### A.    Standard of Review

Where there is no claim that the government breached the plea agreement, as here, this Court will enforce a valid appellate waiver precluding the defendant from appealing an issue within the scope of the waiver.  *United States v. Dillard*, 891 F.3d 151 (6th Cir. 2018).  This Court reviews *de novo* the question of whether

a defendant waived the right to appeal their sentence in a valid plea agreement.

*United States v. Winans*, 748 F.3d 268, 270 (6th Cir. 2014).  The Court first

examines the plea agreement to determine its scope.  *Id*.

### B.    Argument

Glowacki's restitution claim is within the scope of his appellate waiver.  The

parties entered into a conditional plea agreement where Glowacki reserved the

right to appeal the district court's denial of his motion to suppress.  (R. 70: Plea

Trans., PageID 463-64).  He also reserved the right to appeal limited sentencing

issues, but otherwise waived the right to challenge either his sentence or his

conviction.  (*Id.*).  As this Court has explained, "[c]riminal defendants may waive

their right to appeal as part of a plea agreement so long as the waiver is made

knowingly and voluntarily."  *United States v. Swanberg*, 370 F.3d 622, 625

(6th Cir. 2004) (citing *United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir.

2001)).  "[A] defendant in a criminal case may waive any right, even a

constitutional right, by means of a plea agreement."  *Winans*, 748 F.3d at 270

(quoting *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005)).  "A valid

waiver must be both knowing and voluntary."  *Id*.  "When a defendant waives his

right to appeal his sentence in a valid plea agreement, this Court is bound by that

agreement and will not review the sentence except in limited circumstances."

*United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003) (internal citation and quotation omitted).

"Before examining whether the waiver was made knowingly and voluntarily, however, we first 'look to see if the claim raised on appeal falls within the scope of the appellate waiver.'" *United States v. Fowler*, 956 F.3d 431, 436 (6th Cir. 2020) (quoting *United States v. Toth*, 668 F.3d 374, 378 (6th Cir. 2012)). The Sixth Circuit uses traditional contract principles in interpreting and enforcing plea agreements. *Id.*; *United States v. Bowman*, 634 F.3d 357, 360 (6th Cir. 2011). "Ambiguities in a plea agreement are therefore construed against the government." *Id.*

Glowacki's waiver included any challenge to court-ordered restitution. This Court has "repeatedly read a waiver of the right to appeal a 'sentence' as including a 'restitution' order." *United States v. Riccardi*, 989 F.3d 476, 489 (6th Cir. 2021) (collecting cases). This is because "restitution in a part of a defendant's sentence." *Id.* (quotations and citation omitted). As a result, the appellate waiver operates to "extinguish[] [the Defendant's] right to appeal the restitution order." *Winans*, 748 F.3d at 271 (holding that defendant's waiver of "any right" to appeal his sentence also waived the right to appeal the restitution order); *Riccardi*, 989 F.3d at 490 (reasoning that if Riccardi wanted to preserve the right to appeal the restitution order, it should have been negotiated in the plea agreement); *United States v.*

27

*Sharp*, 442 F.3d 946, 952 (6th Cir. 2006) ("If Sharp had wished to reserve his right to appeal the restitution order, he should have negotiated for that right in his plea agreement."). Thus, this Court "will enforce" Glowacki's appeal waiver to bar his restitution challenge so long as "the agreement is made knowingly and voluntarily. *See United States v. Morrison*, 852 F.3d 488, 490 (6th Cir. 2017).

Glowacki's waiver was, in fact, knowingly and voluntarily made. In assessing this issue, this Court reviews the district court plea colloquy and the written agreement. *See Swanberg*, 370 F.3d at 626 (appeal waiver upheld where the record clearly demonstrated that the waiver was part of the plea agreement, appellant had an opportunity to read and review the plea agreement with counsel, appellant was informed in open court that he had waived the right to appeal his sentence, and district court found that appellant made a knowing waiver of those rights); *McGilvery*, 403 F.3d at 362-63 (same); *Fleming*, 239 F.3d at 763 (appeal waiver upheld where the record clearly demonstrated that appellant understood the waiver contained in the plea agreement and consented to it voluntarily). Glowacki's plea colloquy and written agreement demonstrate a valid waiver.

In his agreement with the government, Glowacki acknowledged that he had been advised by counsel of his rights to appeal his conviction or sentence, including post-conviction collateral attack. (R. 47: Plea Agreement, PageID 295). He expressly waived those rights, except for the rights to appeal:

28

> (a) this Court's Order (R. 45) denying Defendant's Motion to Suppress or, in the alternative, Motion For A Hearing Pursuant to *Franks v. Delaware* (R. 37); (b) any punishment in excess of the statutory maximum; or (c) any sentence to the extent it exceeds the maximum of the sentencing imprisonment range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement, using the Criminal History Category found applicable by the Court.

(*Id.*, PageID 295-96).[1]  Before he pled guilty, the court reviewed the appellate waiver with Glowacki and explained that apart from the areas covered in the waiver, "there would be no appeal or challenge to your sentence or conviction that would be permitted."  (R. 70: Plea Trans., PageID 473).  When asked if he understood, Glowacki affirmed.  (*Id.*).  Hence, with the exception of the three very limited circumstances that his agreement outlined, Glowacki's waiver of his right to appeal his sentence "is unlimited in its scope."  *United States v. Calderon*, 388 F.3d 197, 200 (6th Cir. 2004).

Additionally, Glowacki acknowledged that he: (1) had fully discussed with his attorney all of his constitutional rights and the potential consequences of pleading guilty in this case; (2) had sufficient time and opportunity to discuss all aspects of the case in detail with counsel; (3) fully understood the plea agreement;

---

[1] The plea agreement also provided the waiver provision would not bar direct appeal or collateral attack based upon ineffective assistance of counsel or prosecutorial misconduct.  (R. 47: Plea Agreement, PageID 296).

(4) was fully satisfied with the legal counsel and assistance provided by his attorney; and (5) had entered into the agreement knowingly, intelligently, and voluntarily. (R. 47: Plea Agreement, PageID 298-99; R. 70: Plea Trans., PageID 465-67, 477).  Further, during the Rule 11 colloquy, the court confirmed that Glowacki had discussed the charges and any potential defenses with defense counsel.  (R. 70: Plea Trans., PageID 465-66).  Neither Glowacki, nor his counsel, disagreed with the appellate waiver provision.  *See* (R. 70: Plea Trans., PageID 472-73).  Likewise, following Glowacki's affirmations that he wished to plead guilty, neither Glowacki, nor his counsel, disagreed with or objected when the court accepted Glowacki's guilty plea and found that his "plea of guilty is a knowing and voluntary plea supported by an independent basis in fact."  (*Id.*, PageID 478).

Notably, Glowacki does not dispute the knowing and voluntary nature of his plea agreement.  *See Toth*, 668 F.3d at 378 (this Court enforces an appellate waiver according to its terms where a defendant knowingly and voluntarily enters a plea agreement that includes a waiver of appellate rights).  Moreover, Glowacki understood restitution could be imposed as a part of his sentence.  The plea agreement advised that the district court "may order Defendant to pay restitution as a condition of the sentence, probation, and/or supervised release."  (R. 47: Plea Agreement, PageID 292).  Further, during the plea colloquy, the court also advised

Glowacki "there may be restitution depending on the victims. If there is any victim identified who are pictured in any images you may have viewed, then restitution may be ordered by the Court." (R. 70: Plea Trans., PageID 468). Glowacki confirmed that he understood. (*Id.*, PageID 469). This discussion confirms that Glowacki knowingly and voluntarily waived the right to challenge the restitution obligation part of his sentence because he did not specifically reserve it. Thus, although Glowacki argues that the district court erred by requiring him to pay $10,000 in restitution to Lily, his waiver prevents this.

Indeed, this Court's precedent disfavors Glowacki. In *Winans*, 748 F.3d at 270-71, the defendant entered a guilty plea that contained an appellate waiver and left the restitution amount for the court to decide. Despite the waiver, Winans appealed, challenging the restitution amount. This Court determined the appellate waiver "extinguished Winans's right to appeal the restitution order." *Id.* at 271. *See also United States v. Grundy*, 844 F.3d 613, 615 (6th Cir. 2016) (challenge to restitution barred by express terms of the appellate waiver); *United States v. Barry*, 647 F. App'x. 519, 525 (6th Cir. 2016) (appellate waiver would bar court from reviewing restitution order).

Similarly, Glowacki's plea agreement left open the amount of restitution, and waived the right to challenge his sentence, except under a few limited circumstances not present here. (R. 47: Plea Agreement, PageID 292). Like the

31

defendant in *Winans*, Glowacki waived his right to appeal or collaterally attack his sentence except as expressly provided in the plea agreement. (R. 47: Plea Agreement, PageID 295-96). He also agreed that the Court could order "restitution as a condition of the sentence." (*Id*., PageID 292). For these reasons, the Court should find that Glowacki knowingly and voluntarily waived his right to appeal his sentence, including the right to appeal the restitution order, and decline to review his restitution claim.

## III. THE DISTRICT COURT PROPERLY ORDERED RESTITUTION OF $10,000 TO A CHILD PORNOGRAPHY VICTIM WHO SUBMITTED A COMPREHENSIVE RESTITUTION REQUEST AND WHOSE IMAGE GLOWACKI ADMITTED TO RECEIVING.

### A. Standard of Review

"Restitution orders are subject to a bifurcated standard of review." *United States v. Sawyer*, 825 F.3d 287, 291 (6th Cir. 2016). "Whether a restitution order is permitted" is reviewed *de novo*. *Id.*; *United States v. Elson*, 577 F.3d 713, 720 (6th Cir. 2009). The amount of restitution awarded is reviewed for an abuse of discretion. *Sawyer*, 825 F.3d at 292; *United States v. Church*, 731 F.3d 530, 535 (6th Cir. 2013). This Court will "reverse a restitution award only when we are left with a definite and firm conviction that the district court committed a clear error of judgment." *United States v. Mobasseri*, 828 F. App'x. 278, 280 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1425 (2021) (citing *United States v. Batti*, 631 F.3d 371, 379 (6th Cir. 2011) (internal quotations omitted).

**B.     Argument**

Even if this Court determines that Glowacki's appeal waiver does not apply, the district court did not abuse its discretion by ordering restitution totaling $10,000 to Lily, an identified victim of the child pornography that Glowacki possessed.

More specifically, Glowacki pled guilty to receipt of visual depictions of minors engaged in sexually explicit conduct.  (R. 70: Plea Trans., PageID 464).  He possessed nine images "categorized as Child Exploitation/Age Difficult"; "three images categorized as possible child pornography"; and twelve images "categorized as [computer generated imagery]/Animation depiction images of possible prepubescent females."  (R. 50: PSR, PageID 326).  The files categorized as possible child pornography contained visual depictions of real minors engaged in sexually explicit conduct with adults and other minors.  (*Id.*; R. 69: Sentencing Trans., PageID 446).  One of the files had an identifiable victim—a person who using the pseudonym "Lily."  (R. 69: Sentencing Trans., PageID 446).

Lily submitted a comprehensive restitution request that was attached to the PSR, along with a supporting explanation and documentation.  (R. 50: PSR, PageID 327-30; R. 69: Sentencing Trans., PageID 449-50).  That submission supported the district court's order.  Congress has made it mandatory for courts to impose restitution orders "in addition to any other civil or criminal penalty

authorized by law . . . for" Section 2252A(a)(2) convictions. 18 U.S.C. §§ 2259(a)

and (b)(4). Sentencing courts must determine the full amount of a victim's losses

and "order restitution in an amount that reflects the defendant's relative role in the

causal process that underlies the victim's losses, but which is no less than $3,000."

18 U.S.C. §§ 2259(b)(2)(A)-(B). Thus, the court was required to order restitution

in Glowacki's case.[2]

It is "indisputable" that child pornography offenders cause harm to victims

like Lily. *See Paroline v. United States*, 572 U.S. 434, 456-57 (2014). Restitution

orders in child pornography cases should "comport[] with the defendant's relative

role in the causal process that underlies the victim's general losses." *Id.* at 458;

18 U.S.C. § 2259(b)(2)(B). "The government bears the burden of proving the

amount of the victim's loss by a preponderance of the evidence." *United States v.*

*Evers*, 669 F.3d 645, 654-55 (6th Cir. 2012) (citations omitted); *see also* 18 U.S.C.

§§ 2259(b)(2) and 3664(e). The government satisfied that burden here.

The comprehensive restitution request that Lily submitted detailed

significant losses of the kind covered by 18 U.S.C. § 2259(b)(3). *See* (R. 69:

Sentencing Trans., PageID 449-50 ("documentation submitted on behalf of the

---

[2] Glowacki argues the court incorrectly engaged in an analysis under the 18 U.S.C. § 3014 and not under 18 U.S.C. § 2259. The record shows the court appropriately considered the relevant factors under *Paroline* and § 2259.

victim contained over 400 pages of detailed records of the victim's ongoing

victimization, personal and economic losses due to the initial sexual abuse she

endured as a juvenile, and the ongoing circulation of the images of her sexual

abuse.")). Specifically, Lily requested $10,000 of restitution. (R. 50: PSR, PageID

327). Lily's request supported covered losses that totaled $6,008,536, which

included the following components: disaggregated increased medical costs; future

counseling expenses; educational and vocational counseling needs and lost part-

time income during schooling; lost past and future earnings; and out-of-pocket

expenses incurred relative to restitution documentation. (*Id.*). Attorney's fees

were not included. (*Id.*). Lily's attorney also requested a no contact order,

explaining "that some defendants are trading images with Lily's real, legal name as

part of the file title. Lily has been personally contacted by child pornography

'enthusiasts' who have made offensive and frightening remarks and sought in-

person contact with her." (*Id.*). Lily, who is now an adult, stated, "I know this is a

struggle I will be fighting in different ways for likely the rest of my life." (*Id.*,

PageID 330). Notably, at the sentencing hearing, Glowacki did not dispute the

amount of Lily's losses. *See* (R. 69: Sentencing Trans., PageID 429 ("I'm not

disputing the victim's harm that she suffered or the losses.")). Lily's restitution

request thus clearly supported a link between her victimization and losses incurred

because of such victimization.

Lily's documentation, in turn, supported the court's $10,000 order. Although Glowacki complains that the court failed to determine his relative role in causing the victim's harm, that claim lacks merit. Specifically, he argues that his restitution order should have been smaller because he possessed only one image of Lily. Glowacki does not dispute, however, that he possessed an image depicting Lily's sexual abuse as a child. The Supreme Court, in explaining a child pornography offender's relative role in causing a victim's losses, stated that, "While it is not possible to identify a discrete, readily definable incremental loss he caused, it is indisputable that he was part of the overall phenomenon that caused [the victims'] general losses." *Paroline*, 572 U.S. at 456-57.

The Supreme Court rejected using a precise mathematical formula for determining the proper amount of restitution in child pornography cases. *Id.* at 459. The Court explained, "there are a variety of factors courts might consider in determining" restitution that should be used as "rough guideposts" for sentencing courts to consider. *Id.* at 460. These include estimating the number of other offenders; whether the defendant reproduced, distributed, or manufactured the images; and the quantity of images possessed. *Id.* The basis for rejecting a precise mathematical formula was because the Supreme Court trusted that district courts would exercise discretion in ordering restitution. *Id.* at 462.

Here, the district court properly exercised its discretion in issuing Glowacki's restitution order. The restitution amount ordered by the court was the amount that Lily requested, backed up by extensive documentary support. It was a mere fraction of Lily's estimated covered losses and comported with Glowacki's partial, yet indisputable role in causing her losses. The court was keenly attuned to Lily's suffering, underscoring Lily's "ongoing struggles due to the circulation of her sexual abuse images" by reading into the record portions of her victim impact statement contained in the PSR. (R. 69: Sentencing Trans., PageID 450-52). Indeed, in imposing the $10,000 restitution amount, the court stated that it felt this was a "conservative amount" and "point[ed] any reviewing court to the victim impact statement, the amounts of damages the victim suffered." (*Id.*, PageID 454). The court also was aware that Glowacki possessed one image of the victim, and took this into account in selecting the $10,000 amount. (*Id.*, PageID 424, 446, 449). There was no discretionary abuse.[3]

---

[3] Glowacki claims there was not enough evidence to justify the restitution amount and avers he made no written objection because the restitution request was made after the first disclosure of the PSR. (Doc. 27: Glowacki Brief, Page 23). At sentencing, he similarly claimed that there was no written objection to the restitution request because he did not receive it until after the first PSR "had already been issued and disclosed." (R. 69: Sentencing Trans., PageID 422). The government disagrees. At no point between the filing of the Final PSR on February 10, 2022, and the March 4, 2022, sentencing did Glowacki make any attempt to raise the issue. (*See* R. 50: PSR, PageID 322; R. 69: Sentencing Trans., PageID 419). Not only was there ample time for Glowacki to object to the

Although Glowacki now argues that the district court's chosen amount was erroneous because it was confused about the number of images that he possessed, (Doc. 27: Glowacki Brief, Page 24), he is factually incorrect.  It is also unclear how this contention is meant to advance his argument.  The record shows the court understood the number of images Glowacki possessed.  (R. 69: Sentencing Trans., PageID 446, 449).  Moreover, the record demonstrates the court understood Glowacki possessed one image of Lily.  (*Id.*, PageID 446).  Indeed, earlier, the court stated that when considering harm to victims like Lily, $10,000 was not unreasonable when "even one picture is being viewed on the internet by Mr. Glowacki."  (*Id.*, PageID 427).  The court made clear that it disagreed with Glowacki's dispute over the restitution amount based on the extent that Lily had suffered.  (*Id.*, PageID 427-31).[4]

---

restitution request in the three weeks prior to sentencing, Glowacki chose not to address the restitution request in his sentencing memorandum filed on February 25, 2022.  (*See* R. 56: Sentencing Memo., PageID 369).

[4]   In the middle of his restitution argument, Glowacki appears to assert that the district court inappropriately suggested that, by disputing the $10,000 recommended restitution amount, he was not accepting responsibility.  (Doc. 27: Appellant's Br., Page 25).  Putting to one side that he makes no attempt to tie this assertion to any claim of error, Glowacki has mischaracterized what the district court said.  The court did say that an individual's willingness to pay restitution would "have some bearing" on remorse and acceptance of responsibility.  (R. 69: Sentencing Trans., PageID 425).  But it credited him for acceptance (*Id.*, PageID 432), and later made clear it simply disagreed with his number.  (*Id.*, PageID 431, 454-55).  This assertion, therefore, does not advance Glowacki's claims.

Notwithstanding Glowacki's contrary assertion, the district court also adequately explained its restitution decision, including its assessment of the *Paroline* factors. A district court "must conduct a meaningful sentencing hearing and truly consider the defendant's arguments." *United States v. Gunter*, 620 F.3d 642, 646 (6th Cir. 2010) (citation omitted). On appeal, this Court "must determine whether, based on the entirety of the sentencing transcript[,] . . . the district fulfilled this obligation." *Id.* In doing so, this Court "focus[es] less on what the transcript reveals that the court said and more on what the transcript reveals the court did." *Id.*

Here, the district court accepted the uncontested facts contained in the victim's supporting documents. (R. 69: Sentencing Trans., PageID 449-50). The court explained that Lily had submitted documentation containing:

> detailed records of the victim's ongoing victimization, personal and economic losses due to the initial sexual abuse she endured as a juvenile, and the ongoing circulation of the images of her sexual abuse. The documentation estimated that the victim has a total of over $6 million in economic losses . . . not limited to medical costs, counseling expenses, lost earnings, expenses paid for restitution documentation.

(*Id.*, PageID 450). The court further remarked that images of Lily have been traded with her real legal name attached to them, and that Lily has "been personally contacted by child pornography enthusiasts who made offensive and frightening remarks and sought in-person contact with her." (*Id.*). The court noted

that Lily had submitted a detailed accounting of her "past, ongoing struggles due to the circulation of her sexual abuse images," and read from Lily's statement:

> I am a victim of the worst kind of exploitation: Child pornography. Unlike other forms of exploitation, this one's never ending. Everyday people are trading and sharing videos of me as a little girl being raped in the most sadistic ways.

(*Id.*, PageID 451). Based on this evidence, the court concluded that Lily's injuries were substantial, had resulted in substantial economic costs, and that because Glowacki had contributed to those injuries by receiving and viewing at least one such image of Lily, he—along with many others—was partially responsible and should be held financially accountable. Thus, the court ordered that he pay $10,000 in restitution. It reached this conclusion after conducting a meaningful sentencing hearing, thus fulfilling its procedural obligation.

Glowacki argues the court should have disaggregated the amount of loss caused by others or that it should have used "other methods" to determine restitution, such as dividing the number of possessors ordered to pay by Lily's general losses. (Doc. 27: Glowacki Brief, Page 25-26). The record shows, however, that the court did consider that several other restitution orders had been imposed by other courts on other possessors of child pornography featuring Lily. (R. 69: Sentencing Trans., PageID 427). But, the court further explained, while numerous restitution orders payable to Lily may exist, there is no guarantee that

collections will ever be made.  (*Id.*, PageID 430).  Indeed, the PSR noted that Lily has received payment for less than half of her losses despite 1,579 previous restitution orders.  (R. 50: Final PSR, PageID 327).

Although Glowacki cites *United States v. Rothenberg*, 923 F.3d 1309 (11th Cir. 2019), as support for his argument that the court should have disaggregated losses in this case, that case does *not* support his position, as he implies.  To the contrary, the Eleventh Circuit rejected the disaggregation argument in that case. *Id.* at 1334.  The *Rothenberg* Court concluded that district courts are "not required to determine, calculate, or disaggregate the specific amount of loss caused by the original abuser-creator or distributor of child pornography before" determining "the amount of the victim's losses caused by the later defendant who possesses and views the images."  *Id.* at 1333.  *Rothenberg* explained that requiring disaggregation would be inconsistent with the "flexibility and broad discretion district courts have" in determining restitution, as *Paroline* "repeatedly stressed." *Id.* at 1334.  Thus, although the district court here did not undertake a disaggregation analysis, that does not undermine its restitution award.

Neither does Glowacki's assertion that the court misunderstood how much Bitcoin he used to pay for child sexual abuse materials.  The confusion appears to arise from the PSR's statement that investigators identified that Bitcoin Address, which was associated with the dark net website that Glowacki used to purchase the

41

images, received approximately 1.75 Bitcoin, which, at that time, was valued at approximately $12,000. *See* (R. 50: PSR, PageID 325). In fact, as the court observed in denying Glowacki's motion to suppress, Glowacki made two separate payments to Bitcoin Address, roughly valued at $18.27 and $18.29. *See* (R. 45: Order, PageID 282). Thus, the court understood that he paid relatively small amounts of money to access the child pornography in question.

The context of the court's statements confirms that it did not rely on clearly erroneous information to make its restitution award. As Glowacki accurately notes, at sentencing, the court did ask if it correctly understood that Glowacki had paid "approximately $12,000 in U.S. currency" to Bitcoin to commit the offense conduct. (R. 69: Sentencing Trans., PageID 424). The government replied, "I don't recall if it was that much." (*Id.*, PageID 425). The court then noted that the PSR had indicated that "Mr. Glowacki paid 1.75 Bitcoin, which is approximately $12,000 in U.S. currency." (*Id.*, PageID 425). Glowacki said he thought PSR stated the address received a total of 1.75 Bitcoin and was not alleging that he paid 1.75 Bitcoin. (*Id.*). Regardless, the amount Glowacki paid is irrelevant to the calculation of restitution owed. Instead, restitution is based on the victim's loss. *Paroline*, 572 U.S. at 458. Even so, when the court's statement is viewed in context, its reference to Glowacki's payment is a plain expression of exasperation that Glowacki would object to paying $10,000 to a victim who he had exploited

42

(along with many others), but was willing to pay $12,000 to exploit her and others. That Glowacki did not actually pay $12,000 is of no moment, because a court's calculation of restitution owed focuses on losses to the victim, not resources of the defendant. Indeed, "a court may not decline to issue an order of restitution … because of the economic circumstances of the defendant." 18 U.S.C. § 2259(b)(4)(B).

This Court should also reject Glowacki's final claim. For the first time on appeal, he asserts that a jury should have determined Lily's losses. (Doc. 27: Glowacki Brief, Page 27). But appellate courts generally are not to consider issues brought for the first time on appeal "[u]nless exceptional circumstances are present." *United States v. Sheffey*, 57 F.3d 1419, 1431 (6th Cir. 1995). No exceptional circumstances are present here. Moreover, as he acknowledges, under this Court's precedent, restitution does not require a jury finding. (Doc. 27: Glowacki Brief, Page 27-28). Justice Gorsuch's *dissenting* opinion in *Hester v. United States*, 139 S. Ct. 509, 510 (2019), does not override that precedent.

Glowacki purports to raise this argument to preserve it for further review, citing *United States v. Goodin*, 815 F. App'x. 860, 868 (6th Cir. 2020). Goodin rejected the defendant's argument, as this Court should do here. Indeed, this Court has held, repeatedly, that judges can determine restitution awards because restitution does not affect a statutory maximum penalty. *Sawyer*, 825 F.3d at 295;

43

*United States v. Churn*, 800 F.3d 768, 780-83 (6th Cir. 2015); *United States v. Lay*, 612 F.3d 440, 448 (6th Cir. 2010); *United States v. Sosebee*, 419 F.3d 451, 461 (6th Cir. 2005).  This Court's precedent forecloses Glowacki's argument.  *See Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel. The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting *en banc* overrules the prior decision.").

In sum, the court did not abuse its discretion in ordering restitution totaling $10,000 to Lily, one of Glowacki's child-pornography victims.  Because the district court's restitution order reflected a proper exercise of its discretion, this Court should affirm it.

# **<u>CONCLUSION</u>**

For the foregoing reasons, the United States respectfully requests that this Court affirm the district court's denial of suppression and find that his appeal waiver bars Glowacki's restitution challenge.  Even if this Court were to consider the merits of his restitution claim, Glowacki has not demonstrated that the district court abused its discretion.  For these reasons, this Court should deny his claim.

Respectfully submitted,

MICHELLE M. BAEPPLER
First Assistant United States Attorney

By:    /s/ Michael A. Sullivan
Michael A. Sullivan
Assistant U.S. Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113
Telephone No: 216-622-3977
Facsimile No: 216-522-8355
Michael.A.Sullivan@usdoj.gov

## CERTIFICATION OF COMPLIANCE WITH WORD LIMITATION

I hereby certify that the foregoing contains 9,875 words according to the word-counting feature of Microsoft Word for Office 365 and complies with this Court's 13,000 word limitation for briefs.

/s/ Michael A. Sullivan
Michael A. Sullivan
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2022, a copy of the foregoing Brief of Plaintiff-Appellee, was filed electronically.  Notice of this filing will be sent to all parties through this Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ Michael A. Sullivan
Michael A. Sullivan
Assistant United States Attorney

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rule 30(b), the following filings from the district court's records are designated as relevant to this appeal:

| DESCRIPTION OF ENTRY | RECORD ENTRY NO. | PAGE ID RANGE |
|---|---|---|
| Docket Sheet, Northern District of Ohio, Case No. 1:21CR258 | N/A | N/A |
| Complaint | 1 | 1-6 |
| Indictment | 20 | 105-06 |
| Motion to Suppress | 37 | 171-234 |
| Response | 38 | 235-46 |
| Sur-Reply to Defendant's Motion to Suppress | 41 | 266-68 |
| Order | 45 | 280-88 |
| Plea Agreement | 47 | 290-300 |
| Presentence Report | 50 | 322-45 |
| Judgment | 59 | 392-99 |
| Notice of Appeal | 61 | 405 |
| Sentencing Transcript | 69 | 419-61 |